# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BOBBIE J. STEVENSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-1178** |
| **N. BURL CAIN** | **SECTION "I" (6)** |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. For the reasons set forth below, it is recommended that the instant petition be **DENIED WITH PREJUDICE**.

**PROCEDURAL HISTORY**

Petitioner, Bobbie J. Stevenson, presently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana, was convicted on February 5, 2002, following trial by jury

in the Twenty-Fourth Judicial District Court for the Parish of Jefferson of sexual battery of a victim under the age of fifteen in violation of LSA-R.S. 14:43.1. On February 19, 2002, the trial court sentenced petitioner to serve ten years imprisonment. On April 22, 2003, pursuant to the State's amended habitual offender bill of information, petitioner was adjudicated to be a fourth-felony offender, his original ten-year sentence was vacated, and he was resentenced to life imprisonment.

Petitioner was subsequently granted an out-of-time appeal and, on June 28, 2005, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction and life sentence. *State v. Stevenson*, 908 So.2d 48 (La. App. 5 Cir. 6/28/05). On June 2, 2006, the Louisiana Supreme Court denied petitioner's writ application, thereby rendering his conviction and sentence final. *State v. Stevenson*, 929 So.2d 1247 (La. 2006).

Following the finality of his conviction, petitioner sought post-conviction relief, claiming that he received ineffective assistance of counsel. On September 6, 2007, the state district court denied petitioner relief.[1] On October 25, 2007, the state appellate court, finding "no error in the trial court's ruling of September 6, 2007," denied petitioner's writ application. *State ex rel. Bobby J. Stevenson v. N. Burl Cain, Warden*, No. 07-KH-0765 (La.

---

[1] A copy of the district court's September 6, 2007 opinion is contained in the State rec., vol. 2 of 4.

App. 5 Cir. 10/25/07) (unpublished opinion).[2]  Similarly, on September 19, 2008, the Louisiana Supreme Court denied petitioner post-conviction relief. *State ex rel. Stevenson v. State*, 992 So.2d 956 (La. 2008).

In the instant application for federal habeas corpus relief, petitioner raises the same claim that he raised in his state post-conviction proceedings, namely, that he received ineffective assistance of counsel. In its response (rec. doc. 7, p. 4), the State concedes that petitioner's federal habeas petition is "timely filed", but submits that petitioner "has not exhausted state court remedies, as his writ application filed in the Louisiana Supreme Court under docket number 07-KH-2352 and asserting [his ineffective assistance of counsel] claim, remains pending in that court."

The State filed its response on May 30, 2008. On that date, petitioner's writ application, 07-KH-2352, was still pending before the state high court. Since that time, the matter has been adjudicated by the Louisiana Supreme Court. *See State ex rel. Stevenson v. State*, No. 2007-KH-2352, 992 So.2d 956 (La. 9/19/08). Accordingly, petitioner has exhausted his state court remedies. The Court, therefore, shall proceed to address the merits of petitioner's ineffective assistance of counsel claim after reviewing the applicable facts and standard of review.

---

[2]A copy of the Louisiana Fifth Circuit's unpublished opinion is contained in the State rec., vol. 2 of 4.

**FACTS**[3]

Both the victim and her mother are identified by their initials in order to protect their identity, because the victim was a minor, and the victim of a sex crime.

Ms. H. testified that, in November of 1999, she lived in a two-bedroom townhouse at 4221 Lac Couture with her four children, one of whom was J.H. According to Ms. H., the victim was nine years old at the time and was mentally retarded. Ms. H. described J.H. as "brain dead at three months" old and said that J.H. was "very slow."

The townhouse where the family lived was small. J.H. slept in a daybed and Ms. H.'s two sons slept in bunk beds in the same bedroom. Ms. H. slept in the other bedroom with her youngest daughter, and a bathroom separated her room from that of the children.

Between one and two o'clock in the morning of November 13, 1999, Stevenson knocked on Ms. H.'s door. He asked to spend the night because he and some "guys had got into it." Ms. H., who was engaged to Stevenson's cousin, told him that he could spend the night on the sofa downstairs. According to Ms. H., Stevenson was drunk. However, Ms. H. testified she was able to carry on a conversation with him. Ms. H. testified that, at that time, she and the two older children, one of whom was the victim, were already downstairs eating, while the other children were upstairs sleeping. Stevenson asked for and got something to

---

[3] The facts are adopted from the Louisiana Court of Appeal, Fifth Circuit's opinion, *State v. Stevenson*, 908 So.2d 48 (La. App. 5 Cir. 6/28/05).

eat. After twenty or thirty minutes, Ms. H. and the children finished eating and went upstairs, while Stevenson remained downstairs. J.H. went downstairs to get a drink of water, and Ms. H. heard Stevenson telling her to go upstairs. J.H. came upstairs and Stevenson followed. J.H. returned to her bedroom, while Stevenson stopped by Ms. H.'s door to talk to her and then returned downstairs.

Between fifteen and twenty minutes later, Ms. H. was lying in her bed with the bedroom door closed when she heard Stevenson walk back upstairs. The phone rang, and Stevenson ran down to answer it. After a "good while," Stevenson came upstairs, but went down again to answer the doorbell. Ms. H. went to the top of the staircase and heard Stevenson speaking to another man whose voice she did not recognize. Stevenson then closed the door, and approximately twenty minutes later, came upstairs again.

According to Ms. H., she heard a belt buckle hit the floor. Stevenson shut the bathroom door and turned off the bathroom light, and Ms. H. thought he had come upstairs to use the bathroom. Then, within a couple of minutes, Ms. H. heard J.H.'s daybed squeaking, as if a person larger than J.H. had entered the bed. Ms. H. opened her bedroom door and ran into J.H.'s bedroom. When she turned on the light, Ms. H. saw Stevenson's pants on the floor. Stevenson was lying in the bed with J.H. and was naked from the waist down. J.H.'s shorts and underwear were at her knees. Stevenson was lying behind J.H. and his penis was

"going between her legs." She could clearly see his penis was touching J.H.'s vagina. When Ms. H. asked Stevenson what he was doing, he replied, "It's not what you think."

Ms. H. grabbed Stevenson out of the bed and dragged him down the stairs. She kept his pants and underwear so that he could not leave and went next door, summoning her sister and her sister's boyfriend to keep Stevenson at the residence until the police arrived.

Although the State initially called J.H. as a witness, J.H. did not testify at trial. The record reflects that J.H. had difficulty determining her left hand from her right hand. After a few questions from the court, the prosecutor stated that the State would not call her as a witness.

Jefferson Parish Sheriff's Detective Debbie Labit testified that she interviewed Stevenson and took a taped statement from him. Detective Labit advised him of his constitutional rights and gave him a form to sign after going through it with him. She had no difficulty communicating with him, and he did not appear to be intoxicated. He clearly understood what was happening and did not request an attorney. In the statement, Stevenson initially said that he had been living at Ms. H.'s apartment for about eight months. He claimed that he watched her children while she went to work. Stevenson claimed that his clothes were in the closet in the room where J.H. slept and that he was getting some clothes out of the closet when J.H. rubbed up against him, grabbing his penis. Stevenson said that he told her to stop, but then pulled his pants down and got into bed with J.H., whom

6

Stevenson claimed pulled down her own pants. He placed his penis between her legs but did not penetrate her. Stevenson claimed that, prior to the incident, he and another person had consumed approximately two quarts of beer over the course of one hour.

The tape and transcript of the statement were introduced into evidence and the tape was played for the jury at trial. Stevenson did not testify or present any evidence.

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

**ANALYSIS**

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Boyle v. Johnson*, 93 F.3d 180, 187 (5th Cir. 1996). As such, under the AEDPA, this Court may grant habeas relief only upon a determination that the state court decision rested upon an unreasonable application of clearly established Supreme Court law to the facts of the case. *See* 28 U.S.C. § 2254 (d).

The applicable law was enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

Under the deficient performance prong of the *Strickland* test, "it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), citing *Strickland*, 466 U.S. at 690. "An attorney's performance, which enjoys a strong presumption of adequacy, is deficient if it is objectively unreasonable." *U.S. v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995), quoting *U.S. v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *Strickland*, 466 U.S. at 688-89. Petitioner "carries the burden of proof...and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of professional assistance." *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986).

To prove prejudice under the *Strickland* standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Strickland*, 466 U.S. at 694. The *Strickland* court defined a reasonable probability as a "probability sufficient to undermine confidence in the outcome." *Id.* In making a determination as to whether prejudice occurred, courts must review the record to determine the "relative role that the alleged trial errors played in the total context of the trial." *Crockett*, 796 F.2d at 793.

Petitioner argues that counsel was ineffective because counsel "failed to present a plausible line of defense or attempt a sound trial strategy to defend her client." Petitioner points to the fact that counsel "rested without calling any witnesses." Petitioner suggests that counsel should have called Ms. Harris, the victim's mother, as a witness to show that she fabricated the sexual assault allegations against petitioner because she "was jealous of petitioner marrying her cousin"; she wanted "petitioner for herself." Petitioner also suggests that counsel should have had his confession declared invalid because it was given while he was intoxicated. (Rec. doc. 1, pp. 12 and 16).

As noted earlier, petitioner raised his ineffective assistance of counsel claim in his state post-conviction proceedings. In addressing petitioner's claim, the state district court reviewed petitioner's burden of proving, under *Strickland*, *supra*, that counsel's performance was deficient and that he was prejudiced by this deficient performance. The court also observed that the evidence against petitioner was "overwhelming", specifically noting: "A witness caught him in the act of committing sexual battery on the minor child.

The witness immediately summoned the police. The petitioner confessed to the crime."[4] The district court concluded: "In light of the strong case by the prosecution, which included a positive identification and a first-hand account of witnessing all the elements of the crime, combined with the petitioner's confession, the petitioner cannot show that he was prejudiced by his attorney's performance at trial."

Assuming *arguendo* that the victim's mother, Ms. Harris, did harbor jealousy regarding her cousin's impending marriage to petitioner and, as a result, felt animosity toward petitioner, the court finds that petitioner was not prejudiced by counsel's failure to question Ms. Harris regarding her alleged dislike of petitioner. Ms. Harris's negative feelings toward petitioner clearly would not warrant the jury discounting her detailed testimony regarding what she witnessed on the night at issue.[5]

Similarly, petitioner was not prejudiced by counsel's failure to seek to suppress his confession because he was allegedly intoxicated at the time he confessed to police. In *Colorado v. Connelly*, 479 U.S. 157, 166-167, 107 S.Ct. 515, 521-522, 93 L.Ed.2d 473 (1986), the Supreme Court determined that an unclear mental state on the part of the defendant at the time he provides his confession, absent coercive police activity, is

---

[4] A copy of the state district court's opinion denying petitioner's claim for post-conviction relief based upon the claim that he received ineffective assistance of counsel is contained in the State rec., vol. 2 of 4.

[5] Harris's trial testimony is contained in the State rec., vol. 3 of 4, pp. 134-157.

insufficient to render his confession involuntary in violation of the Due Process Clause of the Fourteenth Amendment. The Court explained:

> The purpose of excluding evidence seized in violation of the Constitution is to substantially deter future violations of the Constitution. *See United States v. Leon,* 468 U.S. 897, 906-913, 104 S.Ct. 3405, 3411-3415, 82 L.Ed.2d 677 (1984). Only if we were to establish a brand new constitutional right-the right of a criminal defendant to confess to his crime only when totally rational and properly motivated-could respondent's present claim be sustained.... Respondent would now have us require sweeping inquiries into the state of mind of a criminal defendant who has confessed, inquiries quite divorced from any coercion brought to bear on the defendant by the State. We think the Constitution rightly leaves this sort of inquiry to be resolved by state laws governing the admission of evidence and erects no standard of its own in this area.

*Id*.

In the factually similar case of *Martinez v. Quarterman*, 270 Fed. Appx. 277, 289 (5th Cir. 2008), Martinez claimed that his counsel rendered ineffective assistance by failing to call him as a witness to offer testimony to the effect that he was intoxicated at the time he made his confession. The Fifth Circuit, citing *Colorodo v. Connelly*, *supra*, in support of its decision, rejected petitioner's claim, reasoning:

> [E]ven assuming the trial judge would have credited Martinez's testimony that he was intoxicated, Martinez fails to show any overreaching or coercive treatment by the police. Indeed, he admitted that he was not threatened. The record is devoid of any evidence even suggesting overreaching on the part of law enforcement. Thus, there is no showing that his statements were involuntary and would have been suppressed but for counsel's deficient

12

>performance. Under these circumstances, Martinez has failed to make a
>substantial showing that counsel rendered ineffective assistance....

*Martinez*, 270 Fed.Appx. at 290.

Thus, even if counsel had brought evidence before the trial court that petitioner was intoxicated at the time he made his confession to Detective Labit, said evidence would not have rendered his confession involuntary and, therefore, inadmissible. Accordingly, petitioner was not prejudiced by counsel's alleged deficiency and, as such, counsel was not unconstitutionally ineffective.

## **RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that the instant habeas corpus petition filed pursuant to 28 U.S.C. § 2254, be **DENIED** with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v.*

*United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this   5th   day of    November   , 2009.


_____
LOUIS MOORE, JR.
United States Magistrate Judge